IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY REYNOLDS (R10672), | ) | |
| | ) | |
| Petitioner, | ) | Case No. 16 C 11679 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| FRANK LAWRENCE,[1] Acting Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is pro se petitioner Anthony Reynolds' petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Reynolds' habeas petition and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume that the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sims v. Hyatte*, 914 F.3d 1078, 1095 (7th Cir. 2019). Where Reynolds has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions on direct and post-conviction appeal.

*Factual Background*

This case arises from the shooting death of Martel Edwards on April 28, 2006. That evening, Edwards was at a car wash near Harvey, Illinois with David Dabbs, William Blasingame, and several other individuals when Reynolds, Raymond Lipscomb, and Kendall Edwards arrived in a

---
[1] Because Frank Lawrence is the Acting Warden of Menard Correction Center where Reynolds is incarcerated, the Court substitutes Lawrence as the Respondent under Federal Rule of Civil Procedure 25(d).

blue Buick Park Avenue sedan. Reynolds and Lipscomb exited the car and walked up to Dabbs. Reynolds then shook Dabbs hand. At his May 2009 jury trial, Reynolds testified that he went to the car wash to talk to Dabbs about maintaining peace between rival factions in Harvey, but on cross-examination Reynolds admitted that he was seeking revenge for the death of his friend, Willie Matthews. After shaking hands, Lipscomb fired multiple shots at the victim Edwards and Dabbs before Reynolds drew his gun and fired it. Edwards and Dabbs fled from the scene, but Edwards fell to the ground and later died of gunshot wounds.

The trial court instructed the jury on two kinds of first degree murder—intentional or strong probability and felony murder based on the aggravated discharged of a firearm—as well as on second degree murder. Following deliberations, the jury found Reynolds guilty of both types of first degree murder. The trial court then merged the felony murder conviction into the intentional and strong probability conviction and sentenced Reynolds to 40 years in prison for first degree murder and 20 years for the firearm enhancement.

*Procedural Background*

Reynolds, by counsel, filed an appeal to the Illinois Appellate Court arguing: (1) the trial court erred by refusing to give his proposed self-defense jury instructions; (2) trial counsel was constitutionally ineffective for failing to propose a jury instruction defining self-defense; (3) the felony murder jury instructions violated his right to a fair trial; (4) prosecutorial misconduct violated his right to a fair trial; and (5) the trial court erred by allowing the State to impeach him in violation of Illinois law. The Illinois Appellate Court affirmed Reynolds' conviction and sentence in April 2012. Reynolds then filed a counseled petition for leave to appeal ("PLA") bringing the same claims to the Illinois Supreme Court. The Illinois Supreme Court denied his PLA in September 2012.

In March 2013, Reynolds filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*. He presented the following arguments: (1) trial

counsel was constitutionally ineffective for failing to investigate and call occurrence witnesses; and (2) the State improperly used his 2007 proffer agreement to his detriment. The trial court dismissed Reynolds' post-conviction petition at the second stage of the proceedings in January 2014.

On post-conviction appeal, Reynolds, by counsel, argued: (1) trial counsel was ineffective for failing to investigate and call certain occurrence witnesses; and (2) the State violated the 2007 proffer agreement. In June 2016, the Illinois Appellate Court affirmed the second stage post-conviction dismissal. The only issue Reynolds raised in his post-conviction PLA is that counsel was ineffective for failing to investigate and call occurrence witnesses at trial. The Illinois Supreme Court denied Reynolds' post-conviction PLA in November 2016.

**Legal Standards**

"Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court cannot issue a writ of habeas corpus on a claim rejected on the merits in state court unless the petitioner surmounts high obstacles." *Janusiak v. Cooper,* 937 F.3d 880, 888 (7th Cir. 2019). Specifically, under AEDPA, the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407.

"[A] state prisoner must exhaust his remedies in state court before seeking relief in federal

3

court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). If a habeas petitioner fails to fully and fairly present his federal claims through one full round of state court review, he has procedurally defaulted his claims. *Tabb v. Christianson,* 855 F.3d 757, 765 (7th Cir. 2017).

**Discussion**

Reynolds filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). Viewing his pro se petition liberally, *see Lund v. United States,* 913 F.3d 665, 669 (7th Cir. 2019), he brings these claims: (1) the trial court erred in allowing the State to impeach him in violation of Illinois law; (2) the felony murder jury instructions violated his right to a fair trial; (3) prosecutorial misconduct violated his right to a fair trial; (4) the State's breach of his proffer agreement violated due process; (5) the trial court erred in failing to give certain self-defense instructions; (5) trial counsel was ineffective for failing to proffer a jury instruction defining self-defense; and (7) trial counsel was ineffective for failing to investigate and call three occurrence witnesses.

*Non-Cognizable Claims*

The Court first addresses Reynolds' claims that are not cognizable on habeas review, namely, his arguments concerning the State's use of impeachment evidence and that the felony murder instructions violated his right to a fair trial. As to Reynolds' claim about the State's impeachment evidence violating Illinois law, this claim is not cognizable on habeas review because "[f]ederal habeas corpus relief is not available to correct perceived errors of state law." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015). The claim Reynolds exhausted in front of the Illinois courts challenged Illinois' "mere fact" method of impeaching defendants with prior convictions, as well as Illinois' one-act, one-crime rule. *See People v. Atkinson*, 713 N.E.2d 532, 537, 239 Ill. Dec. 1, 6, 186

4

Ill.2d 450, 461 (Ill. 1999); *People v. King*, 363 N.E.2d 838, 844, 6 Ill.Dec. 891, 897, 66 Ill.2d 551, 566 (Ill. 1977). When conducting habeas review, federal courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," therefore, federal habeas relief is not warranted because Reynolds bases his impeachment arguments on state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Reynolds also contends that the trial court erred by giving felony murder jury instructions. The trial court, however, unequivocally merged Reynolds' felony murder conviction into his intentional and strong probability conviction. As such, the trial court did not impose a sentence for the felony murder conviction, and a "final judgment" in a criminal case means the sentence. *See Burton v. Stewart*, 549 U.S. 147, 127 S.Ct. 793, 798, 549 U.S. 147, 156 (2007) (per curiam); *People v. Flores*, 538 N.E.2d 481, 492, 131 Ill. Dec. 106, 117, 128 Ill.2d 66, 95 (Ill. 1989). Accordingly, as to the felony murder conviction, Reynolds is not "in custody pursuant to a judgment of a State court" as required under § 2254(d)(1).

*Procedurally Defaulted Claims*

Respondent asserts Reynolds procedurally defaulted his claim that the prosecutor's misconduct violated his right to a fair trial because the Illinois Appellate Court's decision rejecting this argument rested on independent and adequate state procedural grounds. *See Richardson v. Griffin*, 866 F.3d 836, 842 (7th Cir. 2017) ("federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment") (citation omitted).

The Illinois Appellate Court discussed the merits of Reynolds' arguments concluding that there was no error, and then explained that Reynolds "failed to preserve either claimed prosecutor misconduct error for review" and "to engage in a plain error analysis, an error must be found to exist." Therefore, the Illinois court based its decision on an independent and adequate state

5

procedural bar, namely, waiver. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) ("We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits."). In reply, Reynolds does not discuss this procedural default or that any exceptions to this default apply. *See House v. Bell*, 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The Court is thus barred from considering the merits of this claim.

In addition, Reynolds has procedurally defaulted his claim that the State violated his due process rights by breaching a proffer agreement in which he gave information about criminal activities in Harvey in exchange for leniency because he failed to bring this claim in his post-conviction PLA. *See Snow*, 880 F.3d at 864 ("To exhaust state remedies in the Illinois courts, the prisoner must include his claims in a petition for leave to appeal to the Illinois Supreme Court."). In reply, Reynolds does not discuss any exception to his procedural default of this claim. Moreover, after considering the evidence underlying Reynolds' claim, the Illinois Appellate Court concluded that the State and Reynolds did not have a leniency agreement under Illinois law, a conclusion that cannot be the basis for federal habeas relief. *See Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019) ("the state court's decision must be an unreasonable application of federal law—not a state court's resolution of a state law issue").

*Merits Discussion*

Next, Reynolds asserts that the trial court erred in failing to give his self-defense and defense of other jury instructions, thus violating due process. He specifically argues that Lipscomb fired shots in self-defense and in his defense. The Illinois Appellate Court reasonably rejected this argument because evidence at trial did not support these jury instructions and the proffered instructions did not communicate the correct principles of Illinois law. As the Illinois Appellate Court explained:

6

> During the jury instructions conference when the discussion turned to the aggravated discharge of a firearm issue and definition instructions, the trial court asked defense counsel what evidence supported the tendering of the self-defense and defense of others instructions. Counsel responded that it was a logical inference that Lipscomb acted in self-defense. The trial court, however, disagreed stating that what Lipscomb would testify to regarding self-defense was speculative because he did not testify and no testimony existed that Lipscomb acted in self-defense or in defense of others.
>
> Jury instructions may be tendered to the jury only if the evidence and law supports the offered instruction. In the instant case, the evidence and law failed to support defendant's proffered jury instruction. A "logical inference," as characterized by defense counsel, of why Lipscomb acted the way he did does not equate to direct evidence and is not sufficient to support the tendering of the defendant's proffered jury instruction, nor does the inference amount to circumstantial evidence sufficient to tender the instruction to the jury. Defendant's proffered jury instruction failed to communicate the correct principles of law based upon the evidence presented, or the lack thereof, to enable the jury to reach a correct conclusion regarding defendant's guilt or innocence. The evidence in the record reveals, however, that Edwards and the other rival faction members did not fire a single bullet that evening and only Lipscomb and defendant discharged their weapons.

*People v. Reynolds*, 2012 IL App (1st) 092625-U, ¶¶ 34, 35 (1st Dist. 2012).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (citation omitted). As such, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed. 54 (1988). Here, the Illinois Appellate Court concluded that the proposed jury instructions were not supported by trial evidence and were not correct statements of law. The appellate court thus did not reach Reynolds' constitutional argument because there was no evidentiary basis for the instructions in the first instance. What is left is the Illinois Appellate Court's conclusion based on state law, which cannot be the basis for habeas relief. *See Estelle*, 112 S.Ct. at 71-72; *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).

Reynolds also contends that his trial counsel was constitutionally ineffective for failing to proffer a jury instruction defining self-defense and for failing to investigate and call three occurrence witnesses. To establish Sixth Amendment ineffective assistance of counsel, Reynolds must show (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* performance prong, there is a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Laux v. Zatecky*, 890 F.3d 666, 674 (7th Cir. 2018) (citation omitted). Under the *Strickland* prejudice prong, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," rather, Reynolds must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 695. If Reynolds fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id.* at 697.

In addressing Reynolds' ineffective assistance of counsel claim concerning a separate self-defense instruction, the Illinois Appellate Court on direct appeal reasoned:

> A separate self-defense definition instruction was not necessary in light of the mitigation language included in the issue instruction and definition of a mitigating factor. The jury received instructions communicating the legal principle relating to the claim that defendant believed deadly force was necessary to protect himself. The instructions fully conveyed to the jury the principle that defendant could have used deadly force if he reasonably believed he faced the imminent use of unlawful force. Inclusion of the phrase "imminent use of unlawful force," as proposed by defendant, in the jury instructions would not have further aided the jury in understanding why defendant or Lipscomb would have used force to protect himself or each other. Here, the tendered instructions fully and comprehensively apprised the jury of the relevant legal principles, including the principle of self-defense.

*People v. Reynolds*, 2012 IL App (1st) 092625-U, ¶ 41. The appellate court then concluded:

> Accordingly, no error resulted from the trial court not tending to the jury defendant's proffered jury instruction defining self-defense and including that principle in the issues instruction. As such, we need not engage in a plain error analysis because no error occurred. Similarly, defendant's alternative ineffective assistance of counsel claim is rejected because no error occurred relating to the instructions tendered to the jury. In the absence of error relating to the jury instructions, no basis exists to find counsel ineffective as claimed by defendant.

*Id.* In sum, without a meritorious jury instruction claim, Reynolds cannot demonstrate that counsel's failure to proffer a jury instruction defining self-defense prejudiced him under *Strickland*. *See Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014).

Reynolds also argues that his trial counsel was constitutionally ineffective because he failed to investigate and call three occurrence witnesses at his jury trial. The post-conviction Illinois Appellate Court first outlined certain legal concepts:

> Trial counsel has a duty to investigate the legal and factual issues in a case; whether a failure to investigate constitutes ineffectiveness is determined by the closeness of the evidence presented at trial and the value of the evidence not presented at trial. Counsel has the discretion to decide which witnesses to call at trial, and we exercise a strong presumption that counsel's decision was the product of sound trial strategy. That said, trial counsel may be deemed ineffective for failing to present exculpatory evidence such as failing to call witnesses who support an otherwise uncorroborated defense theory.

*People v. Reynolds*, 2016 IL App (1st) 140412-U, ¶ 27 (1st Dist. 2016) (internal citations omitted).

As a threshold matter, the appellate court considered whether certain affidavits supporting Reynolds' claims were appropriate under Illinois evidentiary standards in the context of post-conviction proceedings. In doing so, the Illinois Court of Appeals concluded that there were evidentiary and procedural defects concerning the affidavits of two of the occurrence witnesses. Thus, it only evaluated Reynolds' ineffective assistance of counsel claim in relation to occurrence witness Kendall Edwards, who was in Reynolds' car as they drove to the car wash in April 2006.

Comparing Kendall Edwards' affidavit to the evidence in the trial record, the Illinois Appellate Court explained:

9

> Kendall avers that two men approached defendant and Dabbs with guns in hand before Lipscomb began shooting from behind Kendall. While this corroborates defendant's testimony that he saw a gun in Martel [Edward's] hand, it does not change one of the matters we considered overwhelming on direct appeal: there was no evidence that Martel or anyone with him fired a gun before Lipscomb and defendant did. Similarly, Kendall avers that defendant went to the car wash to negotiate peace between rival groups in Harvey. While this corroborates defendant's explanation of the meeting, which he offered to refute Dabbs's testimony that defendant asked him where Willie was, it does not directly contradict Dabbs's testimony. [K]endall avers that Lipscomb stood by his car, which tends to contradict the testimony by Blasingame [and others] that Lipscomb accompanied defendant as he walked up to Dabbs. However, the State witnesses were already inconsistent on this point: Dabbs, and [others] on cross-examination, gave an alternative account that Lipscomb did not approach defendant and Dabbs until after Martel had approached. We conclude that Kendall's evidence does not create a reasonable probability of a different outcome at trial, especially in light of the fact that the jury here was instructed on second degree murder but found defendant guilty of first degree murder.

*People v. Reynolds*, 2016 IL App (1st) 140412-U, at ¶ 30.

Although the Illinois Appellate Court did not cite *Strickland* in its analysis, neither its reasoning nor the result contradicts *Strickland*. *See Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); *Miller v. Zatecky*, 820 F.3d 275, 282 (7th Cir. 2016). To explain, the Illinois court compared the evidence averred in Kendall Edwards' affidavit to trial evidence concluding Kendall's averments did not create a reasonable probability of a different outcome at trial. *See Baer v. Neal*, 879 F.3d 769, 788–89 (7th Cir. 2018) (The *Strickland* "standard for prejudice is 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (citation omitted). The Illinois Appellate Court's decision was objectively reasonable under the facts of this case because it was "within the range of defensible positions." *Felton*, 926 F.3d at 464 (citation omitted). Habeas relief is not warranted as to this ineffective assistance of counsel claim.

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his

habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). The petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Reynolds must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted).

Reynolds has not established that reasonable jurists would debate that his claims based on state law are not cognizable on habeas review or that the Illinois Appellate Court unreasonable applied *Strickland* to his ineffective assistance of trial counsel claims. Also, a reasonable jurist would not debate that the Court erred in its procedural default determinations. *See Slack,* 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case," the claim is not debatable). The Court therefore declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's petition for a writ of habeas corpus [1] and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d). Civil case terminated.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Judge

DATED: 12/4/2019